## Eben Brewer et Ux., Plffs. in Err., *v.* Matthew H. Taylor et Ux.

C. by will devised and bequeathed all her real and personal property to her executors in trust to pay the income to B. and others for life, and upon the death of each *cestui que trust* to convey his share to such persons as he should appoint, and upon death intestate "to convey to such persons as by the laws of the commonwealth would have been entitled to the same if the deceased devisee had been legally seised of, in lawful possession of, or the unrestricted owner of," his share. By codicil C. gave her executors "full power and authority to sell . . . or otherwise dispose of any or all of her estate" from time to time in their discretion, to make, execute. and deliver complete conveyances to the purchasers, to reinvest the proceeds and to distribute the income as provided in the will. *Held,* that this did not give B. *et al.* the real estate in fee, and that the executors could sell and convey a good title thereto.

(Argued April 27, 1887. Decided May 9, 1887.)

July Term, 1886, No. 11, E. D., before MERCUR, Ch. J.,

GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Erie County to review a judgment on a verdict for the plaintiffs in an action of ejectment. Affirmed.

This was an action by M. H. Taylor and Clara B., his wife, in right of said wife against Eben Brewer and Catharine E., his wife.

The facts as they appeared at the trial before BROWN, P. J., holding special court, were as follows:

Mrs. Hannah P. Courtright died testate, on the 12th day of February, 1885, leaving her surviving two daughters, Mrs. Catharine Elizabeth Brewer (formerly Lowry), Hannah Alice Valentine, and two grandchildren, Wm. B. Courtright and Louisa N. Courtright, the children of a deceased son, John P. Courtright. Mrs. Courtright's estate consisted of both real and personal property. Mrs. Courtright occupied the homestead at the time of her death, and Mrs. Brewer was living with her.

On the 19th day of May, 1885, Joseph McCarter and William S. Brown, executors of Hannah P. Courtright, deceased, sold and conveyed by deed of conveyance to Clara B. Taylor, the land in dispute. Mrs. Brewer remained in possession after the death of her mother, and refused to give it up, and this suit was brought to obtain the possession. The property was the homestead of Mrs. Courtright, and was sold by the executors to Mrs. Taylor for $20,000.

The property was of so great a value that none of the heirs of Mrs. Courtright could afford to take it and keep it up. Mrs. Valentine, William B. Courtright, and Louisa N. Courtright were desirous that it should be sold, and urged the executors to make the sale. The executors of Mrs. Courtright, under the authority given them by the will of said decedent, made the sale. Milton Courtright, the husband of Hannah P. Courtright, died in April, 1883. Mrs. Courtright, by her will, dated October 16, 1875, directed as follows:

"I give, devise and bequeath all my real and personal estate whatsoever, and wheresoever situated, unto my executors, hereinafter named, and their successors, to and for their own proper use and behoof.

"In trust, nevertheless, for the following uses, intents and purposes, *viz.,* in trust:                    -

"1. To collect the rents, income, and interest of all the real estate I may have, and my personal property, except bonds, mortgages, stocks, obligations, and other securities and money, and pay the same to my husband, Milton Courtright, during his life.

"2. To collect the rents, incomes, and interest of all the personal property I may have, and pay one fourth (¼) part thereof annually, or semi-annually, to my said husband, M. Courtright, the one eighth (⅛) part thereof, as aforesaid, to my son, Norman P. Courtright; the one fourth (¼) part, in like manner, to my daughter, Catharine Elizabeth Lowry, wife of Captain R. B. Lowry; the one eighth (⅛) part to my two grandchildren, the children of my son, John P. Courtright, deceased; and the one fourth (¼) to my daughter, Hannah Alice Courtright, during their natural lives respectively.

"3. And upon the decease of my said husband, or either of my said children, or grandchildren, then in trust, as respects the part hereby granted or devised to him or her, to grant, convey, assign, and transfer the same (the fee, and principal sum) unto such person or persons as such deceased devisee may have directed by any last will, or writing to be in the nature of a last will, by him or her executed in the presence of two or more creditable witnesses.

"4. And, in the case of the death of my said children without making any such will, then, in trust, to grant, convey, and assign the share of each of said decedents unto such person, or persons, as, by the laws of the commonwealth of Pennsylvania, would have been entitled to the same, if the deceased child, or grandchild, had been legally seised of, in the lawful possession of, or the unrestricted owner of, the said undivided fractional part of my estate.

"5. And, in the case of the death of either of my two grandchildren aforesaid without issue, and without making such will, then in trust, to pay his or her share to the other grandchild; that is, pay the interest, income, and rents to him or her.

"6. And, in case of the death of the second grandchild without issue, and without making such will, then, in trust, to convey this one eighth part to my other children, or their heirs, in such proportions as they would take real estate by the intestate laws of the state of Pennsylvania.

"7. And, upon the death of my husband, M. Courtright,

either before or after my death, without having made such will, then in trust, to convey three eighths of said one fourth part devised to him, to Mrs. Catharine Elizabeth Lowry; three eighths of the same to Hannah Alice Courtright aforesaid; and one eighth to said child, or children, of John M. Courtright; one eighth to N. P. Courtright, and, in case of any of the devisees named in this (7th) clause be not living at the time of the death of my husband, then, in trust, to assign and convey his, her, or their shares as above described in the fourth clause of the specifications of trust.

"8. My executors shall sell my real estate as my husband, M. Courtright, shall direct; pay the interest of the proceeds to him for his life, and then distribute the principal sum in the proportions I have described in the foregoing seventh specification of trust.

"9. My executors may, at their discretion, sell any of my stocks, bonds, obligations, or other securities I may have, and reinvest the proceeds in such way as they deem best and most secure, and again change these; and the reinvestments shall be governed and conveyed as specified for the original securities.

"10. My daughters, Mrs. Catharine Elizabeth Lowry and Hannah Alice Courtright, shall have my wardrobe (all wearing apparel) and my jewelry, in trust, to use and dispose of as they deem best.

"In case of the death of either of my executors, or either declines to act, or resigns, or for any cause cannot act, the remaining one or two shall nominate a successor, or successors, who, on the approval of the orphans' court of Erie county, Pennsylvania, shall be invested with the same powers as my executors hereby appointed.

"I appoint my brother, John Passmore, my nephew, Milton C. Roach, and J. W. Wetmore, executors of this, my last will and testament."

Afterward the testatrix by a codicil altered her will as follows:

"Whereas, on the 16th day of October, 1875, I executed my last will and testament, appointing John Passmore, M. C. Roach, and J. W. Wetmore executors thereof, and because of the death of John Passmore and my son, Norman P. Courtright, and for other reasons, I desire to alter my will.

"I, Hannah P. Courtright, of Erie, Pennsylvania, being of

sound mind, memory, and discretion, do make and publish this as a codicil to my said will, directing that the modifications herein contained shall be a part of the same, and, so far as they change said will, shall be a substitute therefor.

"1. The one eighth of the rents, income, and interest devised by the second clause to my son, Norman P. Courtright, shall be divided among the other devisees of said second clause, in proportion to amounts therein devised to them severally.

"2. The said rents, income, and interest received by my executors, as provided in the second clause of my will, and directed to be paid to Mrs. Catharine E. Lowry and Hannah Alice Courtright, shall be received and held by my executors, free from all control or interference of any kind by any husband either may hereafter have, and also free and clear from all liability in any form from the debts of the husband of either of them, and also free and clear, in the hands of my executors, from all liability for the debts of my said daughters, past, present, or future, and payable only on the order or receipt of each respectively.

"3. In place of Milton C. Roach I nominate and appoint Joseph McCarter, of Erie, Pennsylvania, as one of my executors; and he and J. W. Wetmore shall, without further appointment or substitution, be executors of my last will and this codicil."

After the death of her husband, she made a second codicil to her will, dated August 30, 1884, which contained, besides a change of executors, the following clause:

"And I do hereby give to my said executors, Joseph McCarter and William S. Brown, and the survivor of them, full power and authority to sell, exchange, or otherwise dispose of, any or all of my estate herein, and in last will and codicil, devised in trust to my executors, from time to time, in their discretion, and to make, execute, and deliver and complete conveyances and assurances, in the law, to the purchaser or purchasers thereof—the proceeds of any such sales to be reinvested, as in their discretion they shall deem most advantageous for my estate, the proceeds of which sales, etc., and the income arising therefrom, to be held by them in the same manner, in the same trusts, and for the same purposes as the original estate, and to be disposed of by them in the same manner, to the same persons, and in the same proportions, as is provided in my last will and codicil."

The plaintiffs presented this point:

1. Upon the whole evidence, the verdict must be for the plaintiffs.

The defendants presented the following points:

1. That the only authority to sell the real estate in question, in the original will, is given in the eighth paragraph thereof, which power is vested in M. Courtright, and not in the executors; and such power not having been exercised by direction to the executors, the deed of conveyance of the land in question from the executors to the plaintiff was without authority and void; and, therefore, the plaintiffs cannot recover.

2. That, by the terms of the will, as expressed in the third, fourth, fifth, sixth, and seventh paragraphs thereof, in connection with the terms of the last codicil, the estate of the testatrix vested in the heirs or devisees, and not in the executors, and that, by reason of such terms, the trust attempted to be expressed in said will in the executors failed, and, therefore, the plaintiffs cannot recover.

3. That the power and authority vested in the husband of the testatrix, and her children, to dispose of the property mentioned in said will and codicils by writing, in the nature of a last will and testament, and, in case of the death of any of them, without having disposed of such property by will, to be disposed of according to the laws of the commonwealth of Pennsylvania, vested the land in dispute in such persons absolutely; and, therefore, no authority existed in the executors to dispose of the land in question, and the verdict must be for the defendants.

4. That the authority given to the executors, Joseph McCarter and William S. Brown, in the last codicil, refers only to the personalty, and not to the real estate. But, even in case the court should be of the opinion that the authority expressed there covers the real estate as well as personalty, the concluding portion of the said codicil, in terms, keeps up the same terms and purposes as expressed in the original will, which will vested the title in the heirs and devisees, and not in the executors; and, therefore, the plaintiffs cannot recover, and the verdict must be for the defendants.

5. That the terms of the last codicil do not in any manner change the terms expressed in the third, fourth, fifth, sixth, and seventh paragraphs of the original will; but, on the contrary, the concluding portions of said codicil carefully preserve all the

conditions and terms therein expressed, which terms and conditions vested the title to the property in question in the persons named as beneficiaries in said will; and, therefore, the sale by the executors to the plaintiff was null and void, and the verdict must be for the defendants.

The court charged as follows:

We have concluded to dispose of this case by directing a verdict upon the undisputed evidence, in favor of the plaintiffs, which we will only do in order to raise a question of law involved in the case.

The point presented by the plaintiffs is affirmed. The several points presented by the defendants are answered in the negative. The result of this is that we take a verdict from you in favor of the plaintiffs.

Upon the undisputed evidence, the court directs a verdict in favor of the plaintiffs, subject to the opinion of the court upon the question reserved—whether, under the will of Mrs. Hannah P. Courtright and the several codicils thereto, the executors named in the last mentioned codicil had legal authority to convey the land in controversy to the plaintiffs.

Afterward, upon entering judgment for the plaintiffs, the court filed the following opinion:

Taking the will and its codicils into consideration, the only question we have to answer is: What were the intentions of Mrs. Courtright, as evinced by the words used? From the whole instrument, I think it very clear that she intended that the executors should have full power and authority to sell any or all of her real estate. So clearly does this intention appear that there seems no room for construction, the office of which is to deal with ambiguities.

By the eighth clause of the will, the executors were authorized to sell the real estate as her husband should direct. The husband having died, the power ceased, or at least she might well believe that it did. After the death of her husband, by the second codicil, Mrs. Courtright gives to the executors named, and the successors of them, full power and authority to sell, exchange, or otherwise dispose of, any or all of her estate, and to make, execute, and deliver conveyances and assurances to the purchasers. The language is unequivocal.

We have not been able to find anything in the will that, on

the death of Mrs. Courtright, vested a title to the real estate in suit in Mrs. Brewer, or that can be construed into a right in the defendants to retain the possession as against the plaintiffs, claiming under the deed of the executors; and it is accordingly ordered that, upon payment of jury fee, judgment be entered upon the verdict in favor of the plaintiffs, and against the defendants, for the land described in the writ.

The assignments of error specified the answers to the points presented.

*S. G. Thompson, George A. Allen,* and *L. Rosenzweig,* for plaintiffs in error.—The power to dispose of the property in question by will or by writing in the nature of a will is clearly vested in the beneficiaries or devisees, of which the plaintiff in error is one, and in case no will is made, or no disposition of the property by will is exercised, then, by said provisions, it is made clear that the property shall descend according to the provisions of the intestate laws of Pennsylvania, the same as if the deceased child or grandchild, the devisees, had been legally seised of, in the lawful possession of, or the unrestricted owner of, the same. The power vested in Catharine E. Brewer, to dispose of the property in question by will, constitutes her the owner of her share in fee.   The fourth paragraph of the will, which provides that "In case of the death of the devisees, without disposing of such property by will, the same shall be conveyed unto such person or persons as by the laws of the commonwealth of Pennsylvania would have been entitled to the same, if the deceased child or grandchild had been lawfully seised of, in the lawful possession of, or the unrestricted owner of, the same," gives her the fee under the rule in Shelley's Case [1 Coke, 88]. Norris v. Rawle, 16 W. N. C. 240; Shermer v. Shermer, 1 Wash (Va.) 266, 1 Am. Dec. 460.

A testator devised the whole of his estate to his wife during her life, and afterwards to be equally divided between whomever his wife should think proper to make her heir or heirs, and the testator's brother.   The wife died without making any appointment.   It was held that she took a fee simple in the moiety, which descended after her death to her heir at law.

The trust attempted to be created in the executors fails, by reason of the provisions in the will vesting the title in the devisees, or heirs at law.

The provision of the last codicil, we urge, does not destroy or in any way affect the power of the plaintiff in error to dispose of the estate in question by will; neither does it in case of her death without will avoid that provision of the will which provides that her share of the estate shall go to such person or persons as would take the same under the intestate laws of the commonwealth of Pennsylvania.

*F. F. Marshall,* for defendants in error.—Taking the will and codicils together, or either separately, the intention of the testatrix is clear that she desired her real estate to be sold; that her executors should make such sale, and distribute the proceeds as she in her will had before provided.

A trust to pay the income of a fund to certain legatees during life, and, upon their decease, to distribute the principal among their surviving issue, in certain proportions, is an active one. Varner's Appeal, 87 Pa. 422; Dunn's Appeal, 85 Pa. 94.

A devise to trustees of real and personal property, in trust, to lease and let the real estate, to keep the personal estate invested on bond and mortgage, or other safe security, to collect and receive the rents, interest, and other profits thereof, and to pay over to the children of the testator the net income, is an active, operative trust, and the estate vests in the trustees; the use is not executed, even though all the *cestuis que trust* are *sui juris.* Barnett's Appeal, 46 Pa. 392, 86 Am. Dec. 502.

In that case James Bell gave and devised his estate, real and personal, to his executors, in trust, to pay the income to his three children during their lives respectively; and, in the case of the death of one or two of his children, without leaving lawful issue, then the income to be paid to the survivors, or survivor; and, in case of the death of all his children, without lawful issue them surviving, the said estate, real and personal, shall descend to and be vested in such persons as, by the laws of Pennsylvania, is directed concerning the estates of intestates; also, authorizing and empowering his executors to make sale of such portions of his real estate as ought, in the judgment of his executors, or the survivor of them, to be sold; and that the proceeds of such sales should be invested and held by them for the uses and purposes above set forth and specified.

It is clear that Mrs. Courtright intended that none of her children should take her real estate as real estate; but that her

whose estate should be converted into personal estate, and, by her will, she did convert it into personal estate. If in this we are correct, the deed from the executors passed the estate directly to the purchaser. Dundas's Appeal, 64 Pa. 325; Evans's Appeal, 63 Pa. 183; Roland v. Miller, 100 Pa. 47.

The plaintiffs in error were living with Mrs. Courtright at the time of her death, and, remaining there afterwards, were in possession of the property at the time of the sale, and they refused to go out, Mrs. Brewer claiming the land as her own. Mrs. Brewer is but one of four heirs. The other three desired the sale of the land.

An election to take land, when ordered to be sold as land, must be an unequivocal act, and all interested must join in it. Evans's Appeal, 63 Pa. 186.

PER CURIAM:

The clear and positive language contained in the last codicil, giving a power to sell and convey, fully sustains the court in having given binding instructions to the jury to find in favor of the plaintiffs below.

Judgment affirmed.